**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TANIKA SOWELL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | No. 14-cv-3039 |
| KELLY SERVICES, INC., | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM</u>**

**JOYNER, J.**                                    **October 13, 2015**

Before the Court are Defendant's Motion for Summary Judgment
(Doc. No. 29), Plaintiff's Response in Opposition thereto (Doc. No.
31), and Defendant's Reply in Further Support thereof (Doc. No. 35).
For the reasons given below, the Motion is Granted in part and
Denied in part. An Order follows.

**I. BACKGROUND**

Plaintiff Tanika Sowell is a 32-year-old female who was
employed by Defendant Kelly Services from 2010-2013 as an
"educational recruiter" in its King of Prussia, PA office. Sowell
Dep. (Doc. No. 29-4) at 19:12-13; Doc. No. 30 at ¶¶ 2,4; Doc. No.
29-2 at 13. The circumstances surrounding her termination in the
summer of 2013 and her requests for time off in the months preceding
her termination are the central concern of this action. Plaintiff
alleges that her termination was in response to her requests for
medical leave, and thus violated the Family and Medical Leave Act
(FMLA), the Americans with Disabilities Act (ADA), and the

1

Pennsylvania Human Relations Act (PHRA). Doc. No. 27 at ¶ 1. Plaintiff also alleges that Defendant discouraged her from taking time off for medical procedures, in violation of the FMLA. Defendant denies that Plaintiff's medical conditions had anything to do with her termination or treatment at work, and has asked this Court to grant summary judgment on all counts.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (alteration in original) (quotation marks omitted). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the ... pleading; its response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (alteration in original) (quotation marks omitted).

In employment discrimination cases, the summary judgment standard "is applied with added rigor ... [because] intent and credibility are crucial issues." Stewart v. Rutgers, The State Univ., 120 F.3d 426, 431 (3d Cir. 1997) (internal quotation marks omitted). The Third Circuit has stated that "summary judgment is ... rarely appropriate in this type of case." Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 509 (3d Cir. 1996). "Simply by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment." Id. at 509-10 (internal quotation marks omitted).

## III. DISCUSSION

As noted above, Plaintiff has brought claims under three statutes against Kelly; we will address each in turn.

### A. Family and Medical Leave Act

"The FMLA provides, in relevant part, that eligible employees are entitled to 12 workweeks of leave during any 12-month period due to an employee's own serious health condition." Ross v. Gilhuly, 755 F.3d 185, 191 (3d Cir. 2014) (citing 29 U.S.C. § 2612(a)(1)). "When an employee returns from FMLA leave, the employer must restore the employee to the same or equivalent position he held, with equivalent benefits and with conditions of employment comparable to those he had when he left." Id. (citing 29 U.S.C. § 2614(a)).

"When employees invoke rights granted under the FMLA,

employers may not 'interfere with, restrain, or deny the exercise of or attempt to exercise' these rights." <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 301 (3d Cir. 2012) (quoting 29 U.S.C. § 2615(a)(1)). Similarly, employers may not "'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful.'" <u>Id.</u> (quoting 29 U.S.C. § 2615(a)(2)). These provisions form the basis for what are known respectively as FMLA "interference" and "retaliation" claims. <u>Id.</u> Plaintiff has asserted claims under both theories.

In determining whether Ms. Sowell's claims are viable, it is helpful to first outline the various medical leaves that she took (or attempted to take) during her employment with Kelly. First, in March 2013, Ms. Sowell was hospitalized for an emergency blood transfusion and was absent from work for four days. <u>See</u> Doc. No. 27 at ¶¶ 17-18; Doc. No. 30 at ¶¶ 17-18. Second, she underwent surgery in April 2013 and required approximately one week of leave. <u>See</u> Doc. No. 27 at ¶ 21; Doc. No. 30 at ¶¶ 19-20. Third, in the time between her March 2013 hospitalization and her termination in July 2013, Ms. Sowell took several full and partial days off for medical appointments or to "care for her conditions." Doc. No. 30 at ¶ 21. Finally, Ms. Sowell had a second surgery in September 2013, after her termination from Kelly. <u>See</u> id. at ¶ 62. A central allegation is that Ms. Sowell attempted to schedule this second surgery during her time at Kelly but was unable to do so because of Kelly's

interference.

**1. Interference**

To make an FMLA interference claim a Plaintiff must establish:

(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

Ross, 755 F.3d at 191-92 (citing Johnson v. Cmty. Coll. of Allegheny Cnty., 566 F.Supp.2d 405, 446 (W.D. Pa. 2008)) (internal quotation omitted); see generally Parker v. Hahnemann Univ. Hosp., 234 F.Supp.2d 478, 483 (D.N.J. 2002). By failing to address them Defendant appears to concede the first three factors: (1) that Ms. Sowell was an eligible employee, (2) that Kelly is subject to the FMLA, and (3) that Ms. Sowell was entitled to FMLA leave. See Doc. No. 29-2 at 19-23. Defendant instead argues that Ms. Sowell (1) failed to give notice of her intent to take FMLA leave and (2) ultimately did not suffer any prejudice, because she was not denied leave. Id.

**a. Employee Notice**

"To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave." Lichtenstein, 691 F.3d at 303 (citing 29 U.S.C. § 2612(e)(2)). However, "[i]n doing so, the employee 'need not expressly assert rights under the FMLA or even mention the FMLA.'" Id. (quoting 29

C.F.R. § 825.303(b)). The employee need only provide "'sufficient information for an employer to reasonably determine whether the FMLA *may* apply to the leave request.'" Id. (quoting 29 C.F.R. § 825.303(b)) (emphasis in original). Further, "'where the employer does not have sufficient information about the reason for an employee's use of leave, *the employer* should inquire further of the employee ... to ascertain whether leave is potentially FMLA-qualifying.'" Id. (quoting 29 C.F.R. § 825.303(a)) (emphasis and alteration in original). The key consideration for determining whether the employee's notice was adequate "is how the information conveyed to the employer is reasonably interpreted." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007). This is "generally a question of fact, not law." Lichtenstein, 691 F.3d 294 at 303.

Defendant argues that Plaintiff cannot maintain her interference claim because the Defendant was "never made aware that Plaintiff was taking FMLA qualifying leave." Doc. No. 29-2 at 21. Ms. Sowell's supervisor, Michelle Bussetti, however, was aware that Ms. Sowell had several serious medical issues, knew that at least a portion of her time off in 2013 was due to these medical issues, and knew that she would need a second surgery. See Bussetti Dep. (Doc. No. 29-11) at 29:16-36:11. Plaintiff also testified that she kept Kelly management apprised of the reasons for her absences. See Sowell Dep. (Doc. No. 29-4) at 52:4-8. In addition, Ms. Bussetti

6

informed other members of management that Ms. Sowell would likely need time off in the summer of 2013 for her second surgery. Bussetti Dep. at 43:22-45-1. Defendant also concedes that Ms. Sowell requested FMLA information from Kelly's Human Resources department in July 2013 in relation to her anticipated second surgery. Doc. No. 29-2 at 22.

Thus it is clear that Defendant had at least some indication that Ms. Sowell had medical issues and required time off from work to address them. A reasonable juror could determine that Kelly was on notice of the reasons for Ms. Sowell's absences and her need for future medical leave. See Sarnowski, 510 F.3d at 403 (holding that an employer had sufficient notice for purposes of the FMLA where the plaintiff had chronic medical issues, had missed work to address those issues, and informed management of his possible need for future surgery). Summary judgment on the issue of Ms. Sowell providing notice to Kelly is denied.

### b. Denial of Benefits

Plaintiff cannot maintain an interference claim unless she was actually denied FMLA benefits. See Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005). She need not show that she was discriminated against or treated differently from others; rather, we are concerned here only with "whether the employer provided the employee with the entitlements guaranteed by the FMLA." Id. at 120. Plaintiff has asserted that Kelly denied

FMLA rights in three ways: (1) by failing to provide her with notice of her FMLA rights; (2) by discouraging her from taking FMLA leave; and (3) by terminating her before she could take FMLA leave.

### i. Employer Notice

"The FMLA requires employers to provide employees with both general and individual notice about the FMLA." Lupyan v. Corinthian Colleges Inc., 761 F.3d 314, 318 (3d Cir. 2014). Plaintiff's response appears to concede that general notice was provided, and focuses solely on the issue of individual notice. See Doc. No. 31 at 6. The FMLA requires employers to provide their employees with "individual written notice that an absence falls under the FMLA, and is therefore governed by it." Lupyan, 761 F.3d at 318 (citing 29 C.F.R. § 825.208). Once an employer is made aware that an employee is taking FMLA-qualifying leave, the employer must provide the employee with written notice that details: (1) the employee's eligibility for FMLA leave; (2) whether the employee's leave will be designated as FMLA leave; (3) the employee's obligations under the FMLA and any consequences for not meeting them; and (4) the specific amount of leave that will be counted against the employee's 12-week FMLA leave allotment. Id. (citing 29 C.F.R. § 825.300).

Kelly appears to concede that they never provided Ms. Sowell with individual notice. See Doc. No. 29-2 at 21. Nothing in the record indicates that Ms. Sowell ever received any specific

information about her FMLA rights. Defendant argues that Ms. Sowell never informed Kelly Services that she was taking FMLA leave, so the individual notice requirement was not triggered. Id. For reasons explained above, we find that it is a triable issue of fact whether Ms. Sowell provided adequate notice to Kelly Services that she was using FMLA leave. See supra pp. 5-7. Additionally, Defendant argues "[p]laintiff cannot offer any prejudice she suffered based on the lack of being provided with individualized notice of her rights under the FMLA." Doc No. 29-2 at 21. Defendant is correct that failure to provide notice does not constitute a *per se* denial of FMLA benefits. Rather, as the Department of Labor regulations make clear, "[f]ailure to follow the notice requirements ... *may* constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e) (emphasis added). The key question is whether the employer's failure to provide notice rendered the plaintiff "unable to exercise [the right to FMLA leave] in a meaningful way, thereby causing injury." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 143 (3d Cir. 2004).

In regard to Plaintiff's March 2013 hospitalization, her April 2013 surgery, and her intermittent absences in the spring and summer of 2013, we see no evidence that Plaintiff was prejudiced by this lack of individual notice. Plaintiff admitted in her deposition that she was given time off for these absences and was

returned to her same position at the same salary. See Sowell Dep.
(Doc. No. 29-4) at 47:9-48:16. In other words, even though Kelly
never provided her with individualized notice, she was able to
exercise her right to unpaid medical leave "in a meaningful way."
See Conoshenti, 364 F.3d at 143. As a result, she cannot maintain
an interference claim based on her lack of notice for these
absences.

   With regard to Plaintiff's second surgery, however, the
evidence shows that the lack of notice may have hindered her
ability to meaningfully exercise her right to FMLA leave. As early
as April 2013 Plaintiff informed her supervisor that she would need
time off for surgery. Doc. No. 29-2 at 5. Ms. Bussetti in turn
transmitted this information to two other supervisors, Carrie
Coleman and Tara Wood. Bussetti Dep. (Doc. No. 29-11) at 43:22-45-
1. Another manager, Lewis Keel, testified that Plaintiff informed
him in the spring of 2013 that she would need another surgery. See
Keel Dep. (Doc. No. 29-16) at 39:22-41:5. It is undisputed that
none of these managers provided her with information about her
right to FMLA leave. In addition, Plaintiff contacted Kelly's Human
Resources department on July 23, 2013 requesting information about
FMLA leave for her second surgery. Doc. No. 29-2 at 12-13; Doc. No.
29-5 at 2 of 3. Meredith Maxfield, an FMLA analyst with Kelly, left
a voicemail response for Plaintiff on July 26, but ultimately never
sent her any FMLA information. Doc. No. 29-9 at 2 of 2; Maxfield

10

Dep. (Doc. No. 32-1, Ex. G) at 11:3-5. Plaintiff was terminated the following week, on July 31. Doc. No. 29-2 at 13.

Given these facts, and drawing all inferences in Plaintiff's favor, we find that a reasonable juror could conclude that Kelly's failure to provide Ms. Sowell with individualized FMLA notice relating to her second surgery hindered her ability to exercise her right to FMLA leave. A reasonable juror could conclude, for instance, that had Plaintiff been advised of her FMLA rights, she "would have been able to make an informed decision about structuring [her] leave and would have structured it, and [her] plan of recovery, in such a way as to preserve the job protection afforded by the [FMLA]." Conoshenti, 364 F.3d at 142-43. This is a "viable theory of recovery" under FMLA's interference clause. Id. at 143. As a result, we deny summary judgment on this claim.

### ii. Discouraging FMLA Leave

Courts in this Circuit have held that employer conduct that discourages employees from taking FMLA leave can constitute interference. See Shtab v. Greate Bay Hotel & Casino, Inc., 173 F. Supp.2d 255, 267 (D.N.J. 2001) (finding that reasonable jurors could conclude that an employer's request to delay FMLA leave constituted interference with the employee's rights); Williams v. Shenango, Inc., 986 F.Supp. 309, 320-21 (W.D. Pa. 1997) (finding that an employer's "suggestion that [the plaintiff] take leave on a different week" could "certainly be construed as interfering with

the exercise of FMLA rights").

Plaintiff alleges that her superiors at Kelly discouraged her from taking leave for both her April 2013 surgery and her second surgery. Regarding the April surgery, she testified that the scheduling of this surgery caused "a lot of tension" with Ms. Bussetti, who attempted to persuade her to delay the procedure because it was "not good timing" for the company. Sowell Dep. (Doc. No. 29-4) at 36:9-20. Kelly argues in response that Ms. Sowell received all the leave that she requested, and thus this claim is not legally viable. See Doc. No. 35 at 6. We disagree. The Department of Labor regulations specifically note that "discouraging an employee from using [FMLA] leave" can constitute interference with that employee's rights. 29 C.F.R. § 825.220(b). We believe that the use of the word "discourage" rather than a more restrictive verb such as "block" or "deny" allows for a claim to survive where leave is ultimately (though begrudgingly) granted. Additionally, we note that similar employer arguments were rejected in both Schtab and Williams, as well as in other circuits. See, e.g., Xin Liu v. Amway Corp., 347 F.3d 1125, 1134 (9th Cir. 2003) ("The [FMLA] and the accompanying regulations protect an employee from *any* employer actions that discourage or interfere with the right to take FMLA leave.") (emphasis in original). This alleged discouragement presents a triable issue.

In regards to her second surgery, Ms. Sowell testified that

the scheduling of the procedure caused "tension" with her supervisors. Sowell Dep. (Doc. No. 29-4) at 38:1-24. At that time Ms. Bussetti was on maternity leave, and Ms. Sowell testified that her interim manager, Tara Wood, asked her to delay the procedure until Ms. Bussetti returned. Id. at 52:13-54:17. Plaintiff further stated that she had to reschedule this surgery several times throughout May, June, and July of 2013 because of Wood's "harassment" about the timing. Id. at 63:5-12. In response, Kelly argues that Ms. Sowell never actually scheduled the surgery, and stated that she could not take the time off because she could not afford to be out of work. See Doc. No. 35 at 2-3. This cannot be grounds for summary judgment as it simply highlights a factual dispute between the parties. The claim may proceed to trial.

### iii. Termination

Although neither the interference nor the retaliation clauses "expressly forbids employers from terminating employees 'for having exercised or attempted to exercise FMLA rights,' a Department of Labor regulation has interpreted the sum of the two provisions as mandating this result." Lichtenstein, 691 F.3d at 301 (quoting 29 C.F.R. § 825.220(c)). Additionally, the Third Circuit has held that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009). The Third Circuit has largely

analyzed such claims under the retaliation framework, and has found that where a retaliation claim based on a termination can survive summary judgment, an interference claim based on the same facts also survives. See Lichtenstein, 691 F.3d at 312. We do the same here. As we find that her retaliation claim may proceed to trial, the interference claim may also.

**2. Retaliation**

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Id. at 301-02. Under the Department of Labor's regulatory interpretation "employers are barred from considering an employee's FMLA leave 'as a negative factor in employment actions such as hiring, promotions or disciplinary actions.'" Id. at 301 (quoting 29 C.F.R. § 825.220(c)). "Accordingly, an employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." Id.

"Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law. Accordingly, claims based on circumstantial evidence have been assessed under the burden-shifting framework established in McDonnell Douglas

14

Corp. v. Green." Id. at 302. Under this framework, Ms. Sowell "has the initial burden of establishing a prima facie case. To do so, she must point to evidence in the record sufficient to create a genuine factual dispute about each of the three elements of her retaliation claim." Id. If she can do this, the burden shifts to Kelly to "'articulate some legitimate, nondiscriminatory reason' for its decision." Id. (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). If Kelly is able to meet this minimal burden, Ms. Sowell must then "point to some evidence, direct or circumstantial, from which a factfinder could reasonably ... disbelieve [the employer's] articulated legitimate reasons." Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (omission in the original). Kelly does not dispute that Ms. Sowell both invoked her right to FMLA leave and ultimately suffered an adverse employment action. See Doc. No. 29-2 at 24. Thus we must only address causation.

To make out a prima facie causation claim, Ms. Sowell "must point to evidence sufficient to create an inference that a causative link exists between her [invocation of FMLA rights] and her termination." Lichtenstein, 691 F.3d at 307; see also Erdman, 582 F.3d at 508-09. "When the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' this 'is sufficient standing alone to create an inference of causality and defeat summary judgment.'" Lichtenstein, 691 F.3d at 307

(quoting LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)). Here, Ms. Sowell was fired seven days after she first explicitly requested FMLA information, and only two days after she informed Kelly management of her likely need for two weeks of FMLA leave. See Doc. No. 29-5 at 2 of 3; Sowell Dep. (Doc. No. 29-4) at 63:22-64:2, 80:18-81:15; Doc. No. 32-1, Ex. O at 83 of 85. The close proximity between her invocation of FMLA rights and her termination is within the realm of what courts have found to be sufficient to establish a prima facie case. See, e.g., Lichtenstein, 691 F.3d at 307 (finding a seven-day gap to be sufficient and citing cases involving similar time periods).

Kelly argues that Ms. Sowell's invocation of the FMLA had nothing to do with her termination, that she was terminated due to her "improper behavior and insubordination." Doc. No. 29-2 at 26. Sowell's managers at Kelly consistently cited these reasons in their deposition testimony. See, e.g., Bussetti Dep. (Doc. No. 29-11) at 25:4-14, Wood Dep. (Doc. No. 29-12) at 28:8-18; Coleman Dep. (Doc. No. 29-14) at 30:20-31:21; Keel Dep. (Doc. No. 29-16) at 28:6-20. As told by Kelly, this "improper behavior and insubordination" occurred during several interactions with management in July 2013.

The first was a July 3rd meeting with Lewis Keel, a Kelly Territorial Vice President who worked in the King of Prussia office. See Keel Dep. at 7:19-24, 9:21-22, 67:24-71:24; Doc. No.

16

29-13 at 2-3 of 3. A contemporaneous email from Mr. Keel recapping the meeting shows that he spoke to Ms. Sowell about the need to be a positive, proactive member of the team rather that just bringing "problems [or] challenges to the table." Doc. No. 29-13 at 2-3 of 3. In a July 19 email sent to Susan Medina (Kelly Human Resources) and Carrie Coleman (Area Recruiting Manager) Mr. Keel gave more specific examples of Ms. Sowell's "unwillingness to be part of the solution" and noted that since their meeting, Ms. Sowell's behavior had not changed. Id. at 1 of 3.

The second interaction occurred during a meeting with both Mr. Keel and Carrie Coleman on July 22. The issues brought up in that meeting were Ms. Sowell's "failure to follow management directives, professionalism and time management." Doc. No. 29-10 at 4 of 5. Ms. Coleman explained in a recapping email to Ms. Sowell: "You continue to show a disregard to management direction. As we discussed when Tara asks you to do something it is your responsibility to ensure that the tasks are completed in a timely manner." Id. Regarding Ms. Sowell's "professionalism," Ms. Coleman wrote: "Your behavior has been described as combative and negative. You have consistently pushed back on your manager when tasks are assigned. Additionally, your tone and body language are unacceptable. This was evident during our meeting when you were rolling your eyes and making snide remarks like 'this is crazy'. Your tone during the call was one of irritation and anger." Id. Finally, Ms. Coleman expressed concerns

about Ms. Sowell's "time management," specifically noting that she was "leaving the office on numerous occasions without letting [her] manager know." Id. at 5 of 5. This was in reference to reports that Ms. Sowell had been leaving the Kelly office to use a restroom in a different building because she felt that the her building's facilities were unsanitary. Id. at 4, 5 of 5.

The final interaction occurred in an email exchange between Ms. Sowell and Eric Bonadeo, a member of Kelly's human resources staff. Ms. Sowell emailed Mr. Bonadeo on July 24 with several questions and concerns regarding (1) her right to FMLA leave, (2) Kelly's timekeeping policies and software, (3) her right to scheduled daily break periods, and (4) the state of the bathrooms at her office. See Doc. No. 32-1, Ex. N at 80-81 of 85. Mr. Bonadeo responded with short answers to her questions, which started a back-and-forth between the two, largely focused on the legality and propriety of Kelly's time-keeping procedures. Id. at 78-81 of 85. These emails were provided to Keel, who wrote that they exemplified both the "push back we get" from Ms. Sowell as well as her unprofessional tone with higher-ups. Id. at 77-78 of 85.

Taken together, these episodes provide sufficient evidence to support Kelly's claim that Ms. Sowell was fired for her inappropriate behavior and insubordination. These are acceptable "legitimate, nondiscriminatory" reasons for the purposes of the McDonnell Douglas analysis. See Jalil v. Avdel Corp., 873 F.2d 701,

18

708-09 (3d Cir. 1989). The burden thus shifts to Sowell to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably ... disbelieve the employer's articulated legitimate reasons. <u>Lichtenstein</u>, 691 F.3d at 310 (citation omitted) (omission in the original). Though "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." <u>Fuentes</u>, 32F.3d at 765. "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "'unworthy of credence.'" <u>Id.</u>

Ms. Sowell paints a different picture than that of her former managers. She testified that the claims regarding her performance and attitude issues raised by Mr. Keel and Ms. Coleman in the July 3rd and 22nd meetings were entirely untrue or that her actions had been misconstrued. <u>See</u> Sowell Dep. (Doc. No. 29-4) at 85:20-86:4, 127:2-130:6. Ms. Sowell's contemporaneous notes and emails also reflect this disagreement. <u>See</u> Doc. No. 29-6 at 2 of 3, Doc. No. 29-10 at 3-4 of 5. Ms. Sowell also correctly notes that Ms. Coleman and Mr. Keel had little personal knowledge of her alleged performance problems, and instead were relying on second-hand

19

information from Ms. Sowell's interim-manager, Tara Wood. <u>See</u> Doc.
No. 31 at 21-22; <u>see also</u> Coleman Dep. (Doc. No. 29-14) at 35:16-
36:17, 37:19-24, 44:1-14, 49:22-50:2, 61:23-62:10; Keel Dep. (Doc.
No. 29-16) at 30:6-9, 32:2-6, 32:10-33:7, 34:20-22, 55:7-56:14,
69:22-71:9, 82:5-13. Ms. Sowell has consistently stated that she
did not act unprofessionally during the two meetings, claiming
instead that it was Ms. Coleman who was acting aggressively. Sowell
Dep. at 123:15-124:8; Doc. No. 29-10 at 3-4 of 5. This Court has
reviewed Ms. Sowell's allegedly insubordinate emails to Coleman and
Bonadeo and finds that a reasonable factfinder could determine that
the communications were merely asking questions or seeking
clarification and were not unprofessional or insubordinate. <u>See</u>
Doc. No. 32-1, Ex. K at 67-69 of 85; Ex. N at 77-81 of 85.

Thus Ms. Sowell's testimony and contemporaneous writings
contradict the underlying reasons given for her termination. Kelly
argues that this is merely shows a "disagreement" with her
termination and per <u>Fuentes</u>, cannot be the basis for a finding of
pretext. <u>See</u> Doc. No. 35 at 8 (citing <u>Fuentes</u>, 32 F.3d at 765). We
disagree. Ms. Sowell is not merely stating that the termination
"decision was wrong or mistaken," <u>Fuentes</u>, 32 F.3d at 765; rather,
she is calling into question the very basis of her former
employer's allegations regarding her performance and attitude. Her
testimony, if believed, could lead a factfinder to determine that
the statements of her former managers are "'unworthy of credence.'"

Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 524 (3d Cir. 1992). Thus she has shown sufficient evidence of possible pretext to survive summary judgment. See Tomasso v. Boeing Co., 445 F.3d 702, 708-09 (3d. Cir. 2006) (reaching the same conclusion based largely on contradictory testimony between employer and employee); Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 333 (3d. Cir. 1995) (finding that employee's "testimony disputing the significance of the alleged problems" was one of the factors that could "cast sufficient doubt" on the employer's proffered reasons for discharge).

We note again here the "unusually suggestive" temporal proximity of Ms. Sowell's FMLA request and her termination. "Although this fact is important in establishing plaintiff's prima facie case, there is nothing preventing it from also being used to rebut defendant's proffered explanation." Jalil, 873 F.2d at 709 n.6 (3d. Cir. 1989). Here, a reasonable factfinder could determine that while Ms. Sowell had some performance or attitude deficiencies, her request for FMLA leave was the final straw that precipitated her firing. This would be sufficient to find FMLA liability. As we noted above, the FMLA bars employers from considering a leave request as a negative factor in any way in a termination decision. See 29 C.F.R. § 825.220(c). Ultimately at trial Ms. Sowell "does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer

acted," but instead only needs to show it was a contributing factor. Lichtenstein, 691 F.3d at 301.

In sum, because neither party has presented substantial evidence apart from self-serving testimony relating to the reasons for the termination, Ms. Sowell's retaliation claim is likely to turn on how a jury judges the credibility of the parties' witnesses. As such, the matter is improper for summary judgment and must proceed to trial.

## B. Americans with Disabilities Act

### 1. Discrimination

The ADA prohibits an employer from, among other things, "discriminat[ing] against a qualified individual on the basis of disability in regard to ... discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff asserting an ADA claim for discrimination, in the absence of direct evidence of discrimination, may proceed under the familiar burden-shifting framework of McDonnell Douglas. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). As discussed above, under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination, then the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802. If the defendant succeeds, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for intentional

discrimination. Id. at 804.

In order to make a prima facie case under the ADA using the McDonnell Douglas framework, a plaintiff must show: "1) [s]he is a disabled person within the meaning of the ADA; 2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." Williams v. Phila. House Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (internal quotations and citations omitted).

### a. Disabled under the ADA

Under the ADA, an individual is disabled if she has: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1). Ms. Sowell claims she meets the definition under (A) and (C).[1]

### i. Substantially Limiting Impairment

The ADA Amendments Act of 2008 (ADAAA), while not changing the statutory definition of disability, favors broad construction of the term: "The definition of disability in this chapter shall be

---

[1] Although Plaintiff seems to state in her Amended Complaint that she also meets the definition of disabled under (B) for having a record of impairment (See Doc. No. 27 at ¶ 44) she does not argue this claim in her Response in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 31) so it is considered conceded.

construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). Because the actions out of which this action arise took place after the enactment of the ADAAA, we apply the more expansive construction of disability to this case.

Whether an individual is substantially limited in performing a major life activity is a question of fact. Williams, 380 F.3d at 763. To survive summary judgment, there must be sufficient evidence on the record from which a reasonable jury could conclude that Plaintiff is substantially limited in her ability to perform a major life activity. Major life activities include, but are not limited to: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). They also include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B). "The term 'substantially limits' shall be construed broadly, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1). It is to be an individualized assessment. Id.

Ms. Sowell suffers from anemia, polycystic ovarian disease,

hypertension, and dysfunctional uterine bleeding. Doc. No. 27 at ¶ 13; Sowell Dep. (Doc. No. 29-4) at 28:17-29:1; Doc. No. 32-1, Ex. J at 51, 53, 59, 60, 64 of 85. Ms. Sowell does not claim that she is disabled on account of any one disease in particular; instead, she seems to claim that cumulatively these are physical impairments that substantially limit one or more of her major life activities. Doc. No. 27 at ¶¶ 14-21. Due to these conditions, Ms. Sowell is at times unable to stand, unable to or limited in her ability to lift objects, and at times was required to avoid sexual intercourse. Sowell Dep. (Doc. No. 29-4) at 33:20-34:5, 51:4-7; Doc. No. 31 at 27. Ms. Sowell's conditions also required her to miss time at work. Doc. No. 31 at 27; Doc. No. 32-1, Ex. I; Sowell Dep. at 39:19-41:20.

Defendant argues that the nature of Ms. Sowell's medical problems are temporary, thus falling outside the scope of the ADA. Doc. No. 29-2 at 28. The Defendants, however, cite case law interpreting the statute prior to the 2008 amendments. Id. (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir. 2002)). The Third Circuit has held in non-precedential opinions that the ADA amendments are non-retroactive. See, e.g. Britting v. Secretary, Dept. Of Veterans Affairs, 409 Fed. Appx. 566, 569 (3d Cir. 2011) (non-precedential). As a result, recent cases dealing with events that occurred before January 1, 2009 still apply the old, narrower standard of disability. See, e.g., McCarty v. Tp.

Ambulance Corps., 869 F.Supp.2d 638, 647 n.9 (E.D. Pa. 2012). The ADAAA expressly rejects using the episodic nature of an impairment as a criterion in determining whether it was substantially limiting. 42 U.S.C. § 12102(4)(D). The proper standard "simply asks whether Plaintiff's [conditions] substantially limit a major life activity." Canfield v. Movie Tavern, Inc., No. 13-cv-03484, 2013 WL 6506320 at *4 (E.D. Pa. Dec. 12, 2013).

Ms. Sowell alleges that her conditions interfere with standing, working, and lifting, each of which is considered a major life activity under the statute. Doc. No. 31 at 27; 42 U.S.C. § 12102(2)(A). Ms. Sowell does not go into detail as to the duration and extent to which she is limited in standing and lifting. She took time off for medical procedures, appointments, and when she wasn't feeling well. Sowell Dep. (Doc. No. 29-4) at 39:19-40:19, 41:4-42:12; Doc. No. 29-8. Plaintiff cites to several cases finding hypertension to be a disability under the statute. Doc. 31 at 27 n.10. The analysis, however, of "whether an impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(4). This means not every individual suffering from hypertension will qualify as disabled under the statute. Nevertheless, the implementing regulations of the ADAAA indicate "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether

26

discrimination has occurred, not whether the individual meets the definition of disability." 29 § C.F.R. 1630.1(c)(4). The Labor Department regulations accordingly conclude "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(3).

In light of the purpose of the ADAAA and the EEOC regulations interpreting the statute, and drawing all reasonable inferences in Ms. Sowell's favor as we are required to do for purposes of summary judgment, this Court finds that the nature of Ms. Sowell's physical impairments do not preclude a finding that they substantially limit a major life activity. As such, we find this claim can proceed to trial.

### ii. Regarded as Disabled

Under the ADAAA, an individual is regarded as having an impairment that substantially limits a major life activity "if the individual establishes that he or she has been subjected to an action prohibited under [the statute] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3). What is relevant here is the employer's perception. Some courts in this Circuit have found that knowledge of medical impairments alone is sufficient to establish the "regarded as" prong. See, e.g., Rubano v. Farrell Area School Dist., 991 F.Supp.2d 678, 693 (W.D. Pa. 2014). This Court does not

find it necessary to decide on that issue, because there is sufficient additional information to support a finding in favor of the Plaintiff.

Defendant was aware of Ms. Sowell's medical condition. <u>See</u> Bussetti Dep. (Doc. No. 29-11) at 29:16-36:8; Sowell Dep. (Doc. No. 29-4) at 52:4-8. Defendant's position is that Ms. Sowell "was not qualified to perform her job because the amount of time she missed prevented her from completing the essential functions of the job ... ." Doc. No. 35 at 11. The Plaintiff's qualifications will be discussed below. Here, this statement is relevant because Ms. Sowell's request for time off is directly related to her claimed disability, which required her to take time off for medical procedures and to care for her condition. The Defendant's indication that taking time off rendered Ms. Sowell incapable of performing her job supports the reasonable inference that Kelly Services regarded Ms. Sowell as disabled. Additionally, the record indicates that Ms. Sowell began having disciplinary problems and experiencing "harassment" after she requested medical leave. Sowell Dep. (Doc. No. 29-4) at 66:19-68:6, 68:18-69:7, 73:19-74:14, 75:2-22. This also supports an inference that Defendant perceived Ms. Sowell as being incapable of doing her job after Defendant became aware of her disability.

Because a reasonable factfinder could find that the Defendant perceived Ms. Sowell to be disabled under the ADAAA, this claim

survives summary judgment and can proceed to trial.

**b. Otherwise Qualified**

The ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). This inquiry can be divided into two parts: "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of the position." Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006) (citing 29 C.F.R. § 1630.2(n)).

The Defendant does not dispute that Ms. Sowell possessed the requisite skill, experience, education, and other job-related requirements of the position. Neither does the Defendant argue that Ms. Sowell was not qualified to perform the duties of her job while she was present in the office. Doc. No. 35 at 11. Instead, the Defendant argues that Ms. Sowell was not able to perform the essential functions of the position because her medical conditions required her to take time off work. Id.

A leave of absence for medical treatment may constitute a reasonable accommodation under the ADA. See Conoshenti, 364 F.3d at 151 (contrasting the ADA to the New Jersey Law Against Discrimination and finding the former allows for situations in

29

which the performance of one's job is not contemporaneous with the reasonable accommodation for a disability); Bernhard v. Brown & Brown of Lehigh Valley, Inc., 720 F.Supp.2d 694, 701 (E.D. Pa. 2010); Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 671 (3d Cir. 1999). Defendant cites Supinski v. United Parcel Service to support the proposition that transfer of essential job functions to a different employee is not a reasonable accommodation. Doc. No. 35 at 11 (citing Supinski v. United Parcel Service, 413 Fed.Appx. 536, 543 (3d Cir. 2011) (non-precedential)). The facts of that case, however, cut against the Defendant. There, the Third Circuit found that the district court erred in finding that the defendant had no duty to change the requirements of the plaintiff's position in order to accommodate his disability. Supinski, 413 Fed.Appx. at 543. The court also found that the defendant had not offered sufficient evidence on the issue of whether requiring the employer to employ a second person to make up for the duties the plaintiff was no longer able to perform because he was taking time off work was unreasonable as a matter of law. Id. The court found that these were triable issues that should go to a jury. Id. In so far as Supinski is persuasive authority on this court, its reasoning supports this issue going to trial.

If an "employee makes a request for an accommodation, the employer cannot merely dismiss that request out of hand as unreasonable." Bernhard, 720 F.Supp.2d at 701. The relevant inquiry

is whether the employee can perform the essential functions of her employment with or without reasonable accommodation. Id. As other courts dealing with this issue have noted, "[f]or most jobs, regular attendance at work is an essential function." Shannon v. City of Philadelphia, 1999 WL 1065210, at *5 (E.D. Pa. 2002). Therefore, the inquiry must instead focus on whether the amount of time requested off is reasonable such that it would allow "the employee to perform his or her essential job functions in the near future." Garner v. School Dist. of Philadelphia, 63 F.Supp.3d 483, 492 (E.D. Pa. 2014) (citing Coshenti, 364 F.3d at 151) (appeal pending). A leave of absence for an indefinite period is not a reasonable accommodation. Id.

Here, Ms. Sowell requested no more than two weeks off at a time for medical reasons. Sowell Dep. (Doc. No. 29-4) at 35:19-20, 39:19-40:17, 117:14-21; Doc. No. 29-8. Kelly Services has not argued that the amount of time off Ms. Sowell requested is unreasonable and indeed Kelly has previously shown its willingness to accommodate an employee's time off for medical reasons by having other employees pick up extra responsibilities and by hiring additional help. Wood Dep. (Doc. No. 29-12) at 14:10-15:10. Taking all factual inferences in the nonmoving Plaintiff's favor, we find that Ms. Sowell has sufficiently shown that, with reasonable accommodation in the form of finite periods of medical leave, she was able to perform the essential functions of her position.

Therefore, we find the issue of whether she is a "qualified individual" under the ADA may proceed to trial.

### c. Adverse Employment Action as a Result of Discrimination

The Defendant does not dispute that Ms. Sowell suffered an adverse employment action when she was let go on July 31, 2013. The Defendant does dispute that Ms. Sowell was let go because of discrimination. As with the FMLA claim, above, the close temporal proximity between Ms. Sowell's actions and her termination creates an inference of causation. See supra pp. 15-16, 22. Additionally, the differing accounts of the events preceding Ms. Sowell's termination creates a factual discrepancy typically best resolved by a jury. Therefore, we find that Ms. Sowell has provided sufficient facts to establish a prima facie claim of causation and summary judgment on this issue is denied.[2]

### 2. Retaliation

The retaliation provision of the ADA states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter, or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

---

[2] The second two steps of the McDonnell Douglas framework, the employer's legitimate reason for adverse action and the employee's establishment of that reason to be pretext have been sufficiently covered in the analysis of the FMLA claim. See supra pp. 16-22. Because the analysis here would be duplicative, the Court merely notes here that Ms. Sowell has raised a genuine issue of material fact as to whether Kelly Services' stated reasons for terminating Ms. Sowell were pretext for discrimination and, accordingly, we find the ADA discrimination claim may proceed to trial.

hearing under this chapter." 42 U.S.C. § 12203(a). "To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). "The burden-shifting scheme established in McDonnell Douglas also applies to retaliation claims." Bernhard, 720 F.Supp.2d at 703 n.9. The Defendant does not dispute that Ms. Sowell suffered an adverse action (termination) around the same time as her alleged protected activity. Therefore, we only need to address whether Ms. Sowell engaged in a protected activity, and causation.

### a. Protected Employee Activity

Requesting an accommodation is a protected employee activity under the ADA. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2003); Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 188 (3d Cir. 2010). Retaliation claims differ from discrimination claims under the ADA "in that they do not require a plaintiff to prove he or she has an actual disability; rather, a plaintiff need only show that he or she requested an accommodation in good faith." Barber v. Subway, No. 1:14-CV-613, 2015 WL 5530256 (M.D. Pa. Sept. 18, 2015); See also Sulima, 602 F.3d at 188. A "request for additional leave can be a protected activity under the ADA."

33

Bernhard, 720 F.Supp.2d. At 703.

Ms. Sowell claims that she requested accommodations in the form of time off for medical procedures and a clean bathroom to use. Doc. No. 31 at 36. There is a factual dispute as to whether Ms. Sowell's requested time off for surgery is a reasonable accommodation under the ADA; accordingly, this is not an appropriate claim to be resolved by summary judgment. See supra at pp. 31-32. Even if ultimately the request is found to be unreasonable, the standard for retaliation is only that Ms. Sowell have requested the accommodation in good faith. A reasonable juror could find that Ms. Sowell believed in good faith to be requested an accommodation under the ADA when she requested leave for her medical procedures.

Ms. Sowell explicitly connected her medical problems with her request for a clean bathroom. See Coleman Dep. (Doc. No 29-14) at 74:20-75:4. She made this request several times, to various managers. Doc. No. 29-6 at 3 of 3; Doc. No. 29-10 at 3-4 of 5; Coleman Dep. (Doc. No. 29-14) at 39:18-40:6; Keel Dep. (Doc. No. 29-16) at 57:3-12; Doc. No. 29-5 at 3 of 3. A reasonable factfinder could determine that Ms. Sowell believed in good faith to be requesting an accommodation by noting that she needed a clean bathroom because of her medical condition and continuing to request this accommodation when she found the bathroom was not sufficiently clean. Accordingly, we deny summary judgment on the issue of

whether Ms. Sowell engaged in a protected employee activity.

**b. Causation**

Plaintiff argues that her requests for a cleaner bathroom influenced Defendant's decision to terminate her position. Doc. No. 31 at 36. Ms. Coleman, who supervised Tara Wood, Ms. Sowell's supervisor, indicated she was frustrated by Ms. Sowell's requests and found them to be unreasonable. Coleman Dep. (Doc. No. 29-14) at 11:1-10; 42:18-43:24. She also indicated that this was part of the reason Plaintiff was terminated. Id. at 32:4-60:8. A reasonable juror could conclude that Kelly management took this request into account when it decided to terminate Ms. Sowell.

Defendant argues that "it was not the fact Plaintiff had a complaint about the restroom that created a problem, it was Plaintiff's unilateral decision to leave the building to use a different bathroom" that served as the basis for her termination. Doc. No. 35 at 12. Indeed, Ms. Coleman's testimony could be interpreted in accordance with that conclusion. See Coleman Dep. at 32:4-60:8. There is a factual dispute over whether Ms. Sowell was given permission to leave the building to use the restroom. Ms. Sowell claims that because she found the bathrooms insufficiently clean, she was given permission to leave the building to use a different bathroom. Sowell Dep. (Doc. No. 29-4) at 85:24-86:4; Doc. No. 29-6 at 3 of 3. Ms. Wood, Ms. Sowell's supervisor at the time, said she never told Ms. Sowell she could not leave the building to

use the restroom. Wood Dep. (Doc. No. 29-12) at 51:17-19. Ms. Coleman indicated that Ms. Wood told her that Ms. Sowell left the building without permission. Coleman Dep. at 44:1-14. A reasonable factfinder could find that Ms. Sowell's request for an accommodation in the form of a clean restroom is causally connected to the decision by Kelly Services to terminate her position. Although the Defendant offers a legitimate, nondiscriminatory reason for the termination (that Ms. Sowell was not given permission to leave the building), Ms. Sowell has raised a genuine issue of material fact as to whether she had permission. Because there is a discrepancy of material facts on this issue, we find it may proceed to trial.

It is not disputed that Ms. Sowell was terminated from her position within seven days of explicitly requesting FMLA information and within two days of informing Kelly management that she needed about two weeks of FMLA leave for surgery. Doc. No. 29-2 at 12-13; Doc. No. 29-5 at 2 of 3; Doc. No. 32-1, Ex. O at 83 of 85. As with the FMLA claim, the close temporal proximity, coupled with management's awareness of her need for medical leave, is sufficient to establish prima facie causation. See Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (finding that ten days is sufficient temporal proximity to establish a causal link). The analysis of the remaining McDonnel Douglas prongs with regard to Ms. Sowell's request for leave would be duplicative

36

of the analysis above. See supra pp. 16-22. Accordingly, we will not repeat the analysis here. We conclude that Ms. Sowell has raised a genuine issue of material fact as to whether Defendant's reasons for terminating Ms. Sowell were pretextual and, accordingly, we find the ADA retaliation claim may proceed to trial.

## C. Pennsylvania Human Relations Act

The PHRA protects individuals against discrimination in employment on the basis of disability, among other things. 43 P.S. § 953. The Defendant and Plaintiff both contend that the standards for claims under the ADA and claims under the PHRA are the same, and so the claims should be analyzed together. Doc. No. 29-2 at 27; Doc. No. 31 at 1. The cases cited by both parties, however, compare the PHRA to the version of the ADA before amendment.[3] Cases brought under the pre-amendment ADA analyzed the ADA and PHRA claims together because those statutes had substantially similar definitions of "disability." See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Courts in this Circuit are split on this issue of whether the ADAAA continues to be substantively identical to the PHRA "with the majority concluding that because the Pennsylvania legislature has not enacted a similar amendment to the PHRA, the disability prong of discrimination analysis under the

---

[3] As discussed above, the ADAAA is not applied retroactively, so actions that took place prior to January 1, 2009 are analyzed under the pre-amendment version of the statute.

PHRA should be analyzed in the same manner as pre-ADAAA claims."
Berkowitz v. Oppenheimer Precision Products, Inc., No. 13-4917,
2014 WL 5461515, at *7 (E.D. Pa. Oct. 28, 2014) (citing various
cases); see also Showers v. Endoscopy Center of Central Pa., LLC,
58 F.Supp.3d 446, 461-62 (M.D. Pa. 2014); Rubano, 991 F.Supp.2d at
693-94; Barber, 2015 WL 5530256, at *7 n.10 (noting that because
the issue of whether the plaintiff was disabled was conceded by the
defendant there was no need for separate analysis of the PHRA
claims). This Court agrees with that conclusion. Accordingly,
Plaintiff's PHRA claim requires separate analysis. At issue here is
only that the PHRA defines "disability" more narrowly than the
ADAAA. The other elements of the PHRA are substantively identical
to the ADAAA, so there is no need for separate analysis of those
elements. As with the ADAAA, under the pre-amendment ADA (and its
substantially identical state statute, the PHRA) a plaintiff may
establish disability for purposes of the statute by showing actual
disability, a record of disability, or by showing she is regarded
as being impaired.

In order to establish actual disability under the PHRA, a
plaintiff must demonstrate that she has "actual mental or physical
impairment that substantially limits one or more major life
activities." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d
Cir. 2012). The phrase "substantially limits" for purposes of this
statute means "[u]nable to perform a major life activity that the

average person in the general population can perform" or
"[s]ignificantly restricted as to the condition, manner or duration
under which an individual can perform a particular major life
activity as compared to the condition, manner, or duration under
which the average person in the general population can perform the
same major life activity." Mondzelewski v. Pathmark Stores, Inc.,
162 F.3d 778, 782-83 (3d Cir. 1998) (alteration in the original)
(citing pre-ADAAA EEOC regulations 29 C.F.R. §
1630.2(j)(1)(i),(ii)). Courts consider: "'(i) [t]he nature and
severity of the impairment; (ii) [t]he duration or expected
duration of the impairment, and (iii) [t]he permanent or long term
impact, or the expected permanent or long term impact of [the
impairment] or resulting from the impairment'" in determining
whether or not an individual is disabled within the meaning of the
statute. Id. at 783 (alteration in the original) (quoting pre-ADAAA
EEOC regulations 29 C.F.R. § 1630.2(j)(2)(i)-(iii)).

Ms. Sowell stated that because of her physical condition she
was sometimes unable to stand and sometimes unable to lift objects.
Sowell Dep. (Doc. No. 29-4) at 33:20-34:5; 51:4-7. She also
indicated that she needed to miss work for medical treatment. Id.
at 34:20-35:13; 39:19-40:17; 41:4-42:12. Ms. Sowell contends, and
Kelly agrees, that she was not limited in her ability to do her job
while she was at the office. Id. at 51:8-10; Doc. No. 35 at 11. Ms.
Sowell avers that her impairment is not temporary because she

39

suffers from the same medical conditions today. Doc. No. 31 at 26.

Plaintiff has not presented sufficient facts that she would be considered disabled under the PHRA. She has only stated that she has trouble lifting and standing, without giving specific examples of how frequently, to what degree, or for how long those limitations last. See Marinelli v. City of Erie, Pa., 216 F.3d 354, 364 (3d Cir. 2000) (noting that "general averments" are usually insufficient to establish disability status under the old ADA). She claimed that she had to avoid sexual intercourse but failed to state a duration, indicating only that she was limited "at times." Doc. No. 30 at ¶ 3; Doc. No. 31 at 27. Additionally, while Ms. Sowell argues that her conditions are not temporary, she provides scant evidence that this is the case: a statement from her deposition ("'Are you still suffering from all of these conditions today?' 'Yes.'") and a medical record that indicates she was still suffering from from polycystic ovarian syndrome on August 14, 2014. Sowell Dep. (Doc. No. 29-4) at 28:17–29:1; Doc. No. 32-1, Ex. J at 61 of 85.

Finally, Ms. Sowell maintains that she was substantially limited in the major life activity of working. Doc. No. 31 at 27. Pre-ADAAA regulations had a more exacting standard on what constitutes a substantial limitation of this major life activity. "In determining whether an individual is substantially limited in the ability to work, the proper inquiry, according to the relevant

regulation, is whether the individual is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes *as compared to the average person having comparable training, skills, and abilities.*" <u>Mondzelewski</u>, 162 F.3d at 784 (internal quotation and citation omitted) (emphasis in the original).

The record indicates that Ms. Sowell never had issues performing her job while she was present at work, and was only limited in working when she was taking leave for illness or medical procedures. Less than two months after being let go from Kelly Services, she returned to work in similar-type positions. Sowell Dep. (Doc. 29-4) at 11:3-16:16. This indicates that Ms. Sowell was not limited for an extended period of time from performing a similar class of jobs. Taking into account the severity and seriousness of Ms. Sowell's condition, the duration of her impairment, and the long-term impact of her impairment, a reasonable juror could not find that Ms. Sowell was significantly restricted in her ability to perform a major life activity. Accordingly, we grant summary judgment on this claim.

To show she is "regarded as" being disabled under the PHRA, Ms. Sowell must show she is regarded as having a physical or mental impairment that substantially limits one or more major life activities. <u>McGovern v. MVM, Inc.</u>, 545 F.Supp.2d 468, 474 (E.D. Pa. 2008). Actual disability is not required to meet this definition.

See <u>Wilson v. MVM, Inc.</u>, 475 F.3d 166, 179 (3d Cir. 2007). An employee "must do more than demonstrate that [the employer] was aware" the employee was impaired. <u>McGovern</u>, 545 F.Supp. 2d at 474. An employer must believe the employee's perceived or actual impairment "<u>substantially</u> limits one or more major life activities." <u>Id.</u> (emphasis added). Unlike under the ADAAA, the perceived severity of the impairment is important.

Ms. Sowell informed management at Kelly Services that she needed time off for medical procedures, but there is no indication that Ms. Sowell's supervisors perceived this time off to substantially limit her major life activities. When Ms. Sowell was not taking time off for medical reasons it appears she was able to perform her job and did not request any accommodations, beyond her request for a clean bathroom. The Defendant does not appear to be aware that Ms. Sowell had problems with lifting, standing, or engaging in sexual intercourse. It appears the Defendant was only aware of Ms. Sowell's need for occasional time off and had no reason to believe Defendant perceived her to have a medical impairment more serious than Ms. Sowell's actual impairment, which we have already determined does not meet the narrower definition of "disability" under the PHRA. Drawing all reasonable inferences in favor of the non-movant Plaintiff, the court finds that a reasonable factfinder would be unable to find Ms. Sowell was regarded as disabled by her employer under the stricter PHRA

requirements. Accordingly, we grant summary judgment on this claim.

**IV. CONCLUSION**

Plaintiff brought claims against the Defendant under the FMLA, the ADA, and the PHRA. For the foregoing reasons, the Defendant's Motion for Summary Judgment is denied for all claims falling under the FMLA and the ADA and granted for all claims falling under the PHRA. An Order follows.